### AFFIDAVIT OF DAVID EGERTON, PH.D.

STATE OF TEXAS                §
                             §
COUNTY OF _Potter_            §

My name is David Egerton, Ph.D. I am over the age of 18 and otherwise competent to make this affidavit. The facts stated within this affidavit are within my personal knowledge and such facts are true and correct, unless otherwise indicated.

I conducted a psychological evaluation on Patrick C. Shepherd in June of 2008.

According to available records and consistent with the history reported to me, Mr. Shepherd started experiencing problems, including stuttering at age 4 when his mother remarried and he was beaten daily with a belt by his stepfather. He has been given the accommodation of extra time on examinations since approximately the fifth grade. When given the extra time, Mr. Shepherd's grades were high. However on tests where no such accommodation was made, such as the Scholastic Aptitude Test, his scores were low because he was unable to finish the examination. Mr. Shepherd has been previously diagnosed with a reading disorder, stuttering, and ADHD.

During my consultation with Mr. Shepherd, the following were administered:

Clinical Interview
Nelson-Denny Reading Test

Given the results of the foregoing procedures, I have concluded that his reading rate is obviously impacting his overall test performance but especially his performance on the Comprehension subtest. This conclusion is a direct consequence of his reading disorder and test performance.

As a result of his disabilities, Mr. Shepherd cannot pass the USMLE Step 1 exam without the accommodation of extra time.

Mr. Shepherd has an impairment that substantially limits his major life activities of learning, reading, concentrating, and thinking.

The mitigating measures Mr. Shepherd employs to compensate for his impairment primarily consist of reasonable accommodations of additional time when learning, reading, concentrating, and thinking are impacted by time.

Attached to this affidavit is my Psychological Addendum of Mr. Shepherd. This form was completed by me, a person with knowledge of the event. It was made near the time the evaluation was completed. It is in the regular course of my business to make such a record. It is in the regular course of my business to keep such a record.

Affiant further sayeth not.

EXHIBIT
3

David Egerton, Ph.D.

SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of May, 2009,
to certify which witness my hand and official seal.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires: 08-05-2011

JOANN REILMAN
NOTARY PUBLIC,
STATE OF TEXAS
My Commission Expires 08-05-2011
NOTARY WITHOUT BOND



# Texas Tech Physicians
### of AMARILLO
PSYCHIATRY

Psychological Addendum
SHEPHERD, PATRICK
06/04/08

Patrick was examined at his own request.

## CHIEF COMPLAINT AND GENERAL OBSERVATIONS

The following issues were identified as being problematic: reading inefficiency, difficulty completing standardized within normal time limits.

Relatedly, Patrick revealed that he had sought accommodations from the MBME for the USMLE, Step I. His request had been denied, and he is applying for reconsideration of that request and is seeking an evaluation that identifies, more clearly, the problems he encounters when he takes timed, standardized tests.

Because he has received neuropsychological evaluations on two previous occasions and because MBME has those results, a restatement of history is unnecessary. Instead a description of the testing procedures and rationale untaken for this evaluation will be presented below.

## RESULTS OF PSYCHOLOGICAL TESTS

Nelson-Denny Reading Test

The primary purpose of the Nelson-Denny Reading Test, Forms G and H, is to provide a trustworthy ranking of student ability in three areas of academic achievement: vocabulary development, reading comprehension, and reading rate.

The Nelson-Denny Reading Test is composed of two subtests, Vocabulary and Comprehension. The Vocabulary section consists of 80 items, each with five answer choices, and has a time limit of 15 minutes. The Comprehension section contains seven reading passages and a total of 38 questions, each with five answer choices. The time limit for this section is 20 minutes, the first minute being used to determine reading rate.

**EXHIBIT**
tabbies
4

SHEPHERD, PATRICK
Page Two
06/04/08

For Forms G and H of the test, an extended-time administration is available for the first time. This mode of administration allows 24 minutes for the Vocabulary Test and 32 minutes for the Comprehension Test.

Studies indicate that very high alternate form reliabilities were obtained: Vocabulary; r=0.89; Comprehension; r= 0.81; Total; r= 0.90; and Reading Rate; r=0.68.

**Rationale:** The Nelson-Denny Reading Test was selected because it is one of the few tests available that is both timed and has an extended time standardized procedure available. Thus, it is possible to demonstrate and to compare an examinee's performance under standardized, "normal time" situations with his/her performance under standardized "extended time" circumstances.

**Reference Groups:** Empirical Nelson-Denny normative data were gathered for each of grades 9 through 12 at the high school level, for grades 13 and 14 at the two-year college level, and for grades 13 through 16 at the four-year college/university level. In addition, normative data were gathered for an extended-time administration of the test. The unweighted pooled distribution from these seven reference groups has been converted into a system of normalized scale scores for which the mean is set at 200 and the standard deviation at 25.

Scale scores are based upon the pooled standardization samples from grades 10, 11, and 12, both two-year college classes, and both lower division classes in the four-year institutions.

Reported percentiles are based on comparison of his performance with "end of year" grade 16 students.

## Normal Time Test Results

| Area | Scale Scores | %ile | Grade Equivalents |
|------|-------------|------|-------------------|
| Vocabulary | 225 | 29 | 14.8 |
| Comprehension | 147 | 1 | 4.1 |
| Total | 183 | 13 | 9.3 |
| Reading Rate | 173 | 1 | N/A |

SHEPHERD, PATRICK
Page Three
06/04/08

## Extended Time Test Results (Alternate Form)

| Area | Scale Scores | %ile | Grade Equivalents |
|------|-------------|------|-------------------|
| Vocabulary | 240 | 58 | 17.1 |
| Comprehension | 215 | 22 | 14.0 |
| Total | 234 | 43 | 16.3 |

Several comments are pertinent. First, his reading rate is obviously impacting his overall test performance but especially his performance on the Comprehension subtest. In fact, he was able to answer correctly only five comprehension questions, not because he could not read the material but because he read so slowly that he was unable to complete the reading sections in a timely manner.

The Manual for Scoring and Interpretation indicates that when the reading rate score is substantially below other test scores, particularly when it is in the bottom quartile, there is a strong possibility that he/she has habits of regression, vocalizing, or word-by-word reading. At any rate, it is clear that Patrick's reading rate is substantially below average.

Because reading rate impacts Comprehension scores more noticeably than it affects Vocabulary scores, it is illuminating to compare his normal time Comprehension scores with his extended time Comprehension Scores. Obviously, improvement occurred, but even with the extended time accommodation, he still performed in the below average range in terms of reading comprehension when his performance is compared to an "end of year" four-year college student. Interestingly, he scored at the 63rd percentile when his performance was compared to an "end of year" grade 12 high school student.

In this examiner's opinion, if Patrick is required to take the USMLE, Step I without accommodations, results will not be a fair indication of his knowledge or capabilities. Specifically, his notable below average reading rate will interfere with his ability to complete the test in a timely manner.

## RECOMMENDATION

Allow double time accommodations and allow him to take the test in a distraction free environment.

David R. Egerton, PhD.
Psychologist

## AFFIDAVIT OF ROBIN C. HILSABECK, PH.D., ABPP

STATE OF TEXAS                    §
                                  §
COUNTY OF _Bexar_                 §

My name is Robin C. Hilsabeck, Ph.D., ABPP. I am over the age of 18 and otherwise competent to make this affidavit. The facts stated within this affidavit are within my personal knowledge and such facts are true and correct, unless otherwise indicated.

I conducted a neuropsychological evaluation on Patrick C. Shepherd in July of 2007.

According to available records and consistent with the history reported to me, Mr. Shepherd has been given the accommodation of extra time on examinations since approximately the fifth grade. When given the extra time, Mr. Shepherd's grades were high. However on tests where no such accommodation was made, such as the Scholastic Aptitude Test, his scores were low because he was unable to finish the examination. Mr. Shepherd has been previously diagnosed with a reading disorder characterized by a specific deficit in reading speed/fluency (low average range) relative to his general intelligence and reading comprehension skills (superior range).

During my consultation with Mr. Shepherd, the following were administered:

Clinical Interview
Wechsler Adult Intelligence Scale-III (WAIS-III)
Wechsler Individual Achievement Test-II (WIAT-II)
Trail Making Test (TMT)
Stroop Color and Word Test (Stroop)
Rey Complex Figure Test (RCF)
California Verbal Learning Test – 2 (CVLT-2)
Beck Depression Inventory-II (BDI-II)
Beck Anxiety Inventory (BAI)

Given the results of the foregoing procedures, I have diagnosed Mr. Shepherd pursuant to DSM-IV, on Axis I, 314.9: Attention Deficit/Hyperactivity Disorder, NOS, 314.01 Reading Disorder (deficient reading speed/fluency), and 307.0: Stuttering. I have also diagnosed Axis III with Migraine headaches.

As a result of his disabilities, Mr. Shepherd cannot pass the USMLE Step 1 exam without the accommodation of extra time.

Mr. Shepherd has an impairment that substantially limits his major life activities of learning, reading, and concentrating.

The mitigating measures Mr. Shepherd employs to compensate for his impairment primarily consist of reasonable accommodations of additional time when learning, reading, concentrating, and thinking are impacted by time.

**EXHIBIT**

5

Attached to this affidavit is my neuropsychological evaluation of Mr. Shepherd.  This evaluation was completed by me, a person with knowledge of the event.  It was made near the time the evaluation was completed.  It is in the regular course of my business to make such a record.  It is in the regular course of my business to keep such a record.

Affiant further sayeth not.

Robin C. Hilsabeck, Ph.D., ABPP

SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of May, 2009, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires: _____



**DEPARTMENT OF VETERANS AFFAIRS**
**South Texas Veterans Health Care System**
**Audie L. Murphy Memorial Veterans Hospital Division**
**7400 Merton Minter Boulevard**
**San Antonio, Texas 78229-4404**

July 18, 2007

In Reply Refer To:  671/116B

## NEUROPSYCHOLOGICAL REPORT

**NAME:** Patrick C. Shepherd
**DATE OF BIRTH:** 12/15/1975 (age 31)
**EDUCATION:** 17 years
**DATE OF EVALUATION:** 7/9/2007

> **EXHIBIT**
> 6

**REASON FOR REFERRAL:**
Mr. Shepherd is a 31-year-old, right-handed, divorced, Caucasian man who underwent re-evaluation for learning disorder to update his records to submit an application for accommodations to take the USMLE. The patient was evaluated previously by Stephen L. Holliday, Ph.D., and diagnosed with a reading disorder characterized by "a specific deficit in reading speed/fluency (low average range) relative to his general intelligence and reading comprehension skills (superior range)."

**INTERVIEW DATA:**
Relevant History and Current Complaints:  Mr. Shepherd reported that he has always had trouble reading quickly and finishing tests on time.  He recalled that in third grade, he used to rush through tests and make "a lot of careless errors."  He also got in trouble for talking too much in class.  At that time, he was making B and C grades with a couple of Ds.  Then his fourth grade teacher told him to slow down and check his work, and his "grades went up dramatically."  Since approximately fifth grade, he has been given extra time to complete tests and has been able to make good grades with this accommodation. He related that throughout elementary, middle, and high school, he was given this extra time by teachers without having to make a formal request because they could see he could perform the work if allowed extra time. As a result, he graduated high school in the top 4% of his class, number 21 out of 625. He said his grades were always high, but his state mandated academic achievement test scores were only average because he could never finish the tests within the allotted time. Likewise, he obtained an average SAT score, 1070, because he had no accommodations and did not finish a substantial portion of the exam. The patient stated that it was not until he began more difficult coursework at University of Texas in San Antonio (UTSA), taking premed courses, that he made a formal application to the disability office requesting additional time to complete exams. Mr. Shepherd said "all of his teachers noticed" that he had the ability to do the work but needed extra time to finish tasks.  It was at their urging that he made the formal request for accommodations and was granted time and a half based on results of the evaluation by Dr. Holliday.  The patient commented that sometimes even time and a half was not enough for him to finish exams, but he was still able to make good grades. He graduated from UTSA in 2003 with a Bachelor of Science in Biology and

Shepherd, Patrick C.
Page 2

a Bachelor of Arts in Philosophy. He added that while at UTSA, he took studies skills courses through Student Health to try to improve his reading speed, but these courses did not adequately address his problem. He also took a couple of speed reading courses, which have helped only a little. He noted that the average graduate student reads 300 words per minute, and he is at 100 words per minute even after taking the speed reading courses.

In applying for medical school, Mr. Shepherd took the MCAT 3 times. The first time he took the MCAT with time and a half accommodation, he did not have time to finish but still made an above average score of 23. He requested additional time, up to double time, but was refused. He decided to attempt the MCAT a second time anyway using the time and a half accommodation, but was sick on the day of the exam and performed poorly, obtaining a score of 20 or 21. On his third attempt with time and a half accommodation, he still did not finish the exam; he estimated that he completed only 75% of items on the two science subtests. In spite of not completing 25% of exam questions on these two portions, Mr. Shepherd still obtained an above average score of 27.

The patient reported that he just completed his first year of medical school at Texas Tech University Health Sciences Center. He said he has been allowed to take time and a half on his exams, and although this is enough time for some courses, it is not enough for the courses with more intensive reading demands, and he is making Cs in these courses. He stated that he knows the answers but does not have enough time to show his knowledge. In April of this year, he requested a meeting with the office of student affairs to express his frustration with his inability to complete exams in the time allotted. He clarified that not only does he have a hard time reading quickly, but exams with writing components are also difficult for him to complete within the allotted time. He is worried that he may not pass the USMLE without receiving double time accommodation.

Medical History: The patient indicated his only medical problems are occasional migraine headaches, which occur approximately once a month, along with non-migraine headaches which occur approximately 3 times a month. He is not currently taking any medications. He denied any history of seizure, stroke, or head injury with loss of consciousness. He has never sought treatment for mental health reasons and reported his current mood as "good" in spite of a recent breakup with his girlfriend and the recent death of his grandfather who was a source of support for him in medical school. He does not use any substances for religious reasons. Family history is positive for learning problems in all 3 of his half brothers. His youngest half brother has Down's syndrome, his middle half brother has attention-deficit/hyperactivity disorder (ADHD) and asperger's disorder and takes Ritalin, and his oldest half brother also requires extra time to read and finish exams. His biological father has paranoid schizophrenia and currently lives in an assisted living facility.

Psychosocial History: The patient was born and raised primarily in San Antonio, and English is his only language. He was a full-term baby, and there were no complications during pregnancy or birth. He met all early developmental milestones ahead of the expected time frames. He began

Shepherd, Patrick C.
Page 3

stuttering at approximately age 4, which he associated with regular beatings with a belt by his
step father since he had no trouble speaking previously. Mr. Shepherd clarified that these
beatings were not so severe that he required medical intervention. He began speech therapy
shortly afterward and continued in speech therapy through his early elementary grades. The
patient said he generally was not a behavior problem in school and had no trouble making or
keeping friends. As noted above, he had trouble finishing tests on time and was always the last
one to finish. He added that it took him "forever" to do his homework, and he required a lot more
time to study than his peers. Mr. Shepherd served in the Air Force from 1996-2000, attaining the
rank of E-4 at discharge. He related that he passed the exam to be promoted to E-5 on his first
attempt, in spite of not having enough time to finish the exam. He was not granted the E-5 rank
because he did not receive some required training due to imminent discharge. Since separating
from the military, his primary work has been as a full-time student. The patient is divorced and
has no children.

Behavioral Observations:  The patient presented as an open, friendly man who appeared his
stated age. He arrived on time for his appointment and was unaccompanied. He was casually
dressed, and grooming and hygiene were good. His gait was unremarkable, and no psychomotor
slowing or agitation was evident. He was alert, attentive, and grossly oriented but commented
that he was tired from driving 6 hours yesterday afternoon to come to San Antonio from
Lubbock, and he stayed up talking the night before until 11 p.m. catching up with an old friend.
He made good eye contact and demonstrated good interpersonal skills. He spoke clearly at an
average rate, stuttering occasionally. His speech was goal directed, and he appeared to have no
difficulty understanding conversational speech or task instructions. There was no overt evidence
of formal thought disorder, delusions, or hallucinations. Memory for remote and recent events
was grossly intact. Insight and judgment also were intact. Mood and affect were within normal
limits and appropriate to the situation. Mr. Shepherd was pleasant and cooperative throughout
the evaluation and appeared to put forth his best effort on all tasks. The following results are
considered valid indicators of his current level of neuropsychological functioning.

**TESTS ADMINISTERED (see attached summary sheet for scores):**
Wechsler Adult Intelligence Scale-III (WAIS-III):
Wechsler Individual Achievement Test-II (WIAT-II):
Trail Making Test (TMT)
Stroop Color and Word Test (Stroop)
Rey Complex Figure Test (RCF)
California Verbal Learning Test - 2 (CVLT-2)
Beck Depression Inventory-II (BDI-II)
Beck Anxiety Inventory (BAI)

**TEST RESULTS:**
Intellectual Functioning:  Mr. Shepherd obtained a WAIS-III Full Scale IQ score in the superior
range (i.e., 126; 97th percentile), which is consistent with his prior score of 122 from his
evaluation in 2002. His Verbal Comprehension index score was in the very superior range (i.e.,

Shepherd, Patrick C.
Page 4

131; 98th percentile), his Working Memory index score was in the superior range (i.e., 124; 95th percentile), his Perceptual Organization index score was in the high average range (i.e., 118; 88th percentile), and his Processing Speed index score was in the average range (i.e., 108; 70th percentile). The 23-point discrepancy between his Verbal Comprehension and Processing Speed index scores is both statistically and clinically significant, occurring in only 12.7% of the normal population, suggesting significant weaknesses in information processing speed compared to verbal abilities.

Academic Achievement: On the WIAT-II, Mr. Shepherd obtained standard scores of 131 (98th percentile) on the Mathematics Composite, 117 (87th percentile) on both the Reading and Written Language Composites, and 103 (58th percentile) on the Oral Language Composite. His Mathematics Composite score is in the superior range, his Reading and Written Language Composite scores are in the high average range, and his Oral Language Composite score is in the average range. A closer look at specific academic performances revealed standard scores more than 15 points below his Full Scale IQ on 5 out of 9 subtests: Word Reading, Pseudoword Decoding, Spelling, Listening Comprehension, and Oral Expression. In addition, while his Reading Comprehension subtest score was in the highest quartile, his reading speed fell far below expectations at the low end of the bottom quartile. Moreover, he was unable to finish an essay within the allotted time (15 minutes), but obtained a Written Expression subtest score in the superior range because of well-developed technical writing skills (i.e., organization, vocabulary, and theme development). These findings are generally consistent with those reported by Dr. Holliday in 2002 in that reading skills, particularly speed/fluency, were below expectations given his Full Scale IQ and reading comprehension abilities. An additional finding from the current evaluation was that overall oral language skills involving listening comprehension and oral expression were below expectations given the patient's Full Scale IQ (oral language skills were not evaluated in 2002).

Attention, Memory, and Information Processing: Mr. Shepherd's performances on measures of attention and speeded information processing ranged from low average to average. He exhibited the most difficulty on a task of conceptual set shifting, Part B of the TMT, performing in the low average range (11.5[th] percentile). Consistent with findings in 2002, he exhibited his worst performance on this measure. Basic visuoperceptual/constructional skills were within normal limits, although the patient's approach to a copy task was slightly disorganized, resulting in low average recall after both short and long delays. On the CVLT-2, a measure of verbal memory, Mr. Shepherd displayed a superior learning curve and high average to superior recall.

Emotional Functioning: Results of the BDI-II and BAI reflected a minimal level of depressive and anxious symptomatology, which was consistent with his self-report and negative history of mental health problems.

**SUMMARY:**
Mr. Shepherd reported difficulties rushing through tests and making careless mistakes as early as third grade. After having been advised by his fourth grade teacher to slow down and check his

Shepherd, Patrick C.
Page 5

work, his grades improved dramatically.  However, since then he has struggled to finish tests on time and often leaves large portions of exams blank because he cannot get to them before the allotted time is up.  In 2002, he underwent formal evaluation and was diagnosed with a reading disorder characterized by deficient reading speed/fluency. Developmental history is significant for stuttering that is still present today.  Family history is significant for learning problems in all 3 of his half brothers, two of whom have formal diagnoses, and paranoid schizophrenia in his father.  Interview and test data from the current evaluation revealed superior intellectual abilities, overall, with significant weaknesses in information processing speed, particularly when conceptual shifting and complex concepts were involved.  In addition, mild disorganization in his approach to complex tasks was evident.  While slowed processing speed and organizational problems negatively affect his reading rate, they also interfere with his ability to complete written assignments on time and are reflective of a more generalized learning disorder, attention-deficit/hyperactivity disorder (ADHD), which is characterized by deficits in attention and executive functioning.

**DIAGNOSTIC IMPRESSIONS:**

| Axis I | 314.9 | Attention-Deficit/Hyperactivity Disorder, NOS |
|---|---|---|
|  | 314.01 | Reading Disorder (deficient reading speed/fluency) |
|  | 307.0 | Stuttering |
|  |  |  |
| Axis II | V71.09 | No Diagnosis |
|  |  |  |
| Axis III |  | Migraine headaches |

**RECOMMENDATIONS:**

1) If not medically contraindicated, Mr. Shepherd may benefit from medication management of ADHD.
2) To help cope with slowed processing and organizational problems, the following accommodations are recommended:
    a. Work/read in short increments (i.e., 15-20 minutes) interspersed with brief periods of activity (e.g., 5 minutes of walking around);
    b. Break down complex assignments into smaller steps, completing each one before moving onto the next;
    c. Minimize potentially distracting stimuli by working/reading alone or in a quiet room;
    d. Sit at the front of the room and away from windows;
    e. Plan to spend more time than peers to complete projects (i.e., double or triple the time expected for completion);
    f. Take untimed exams whenever possible.  In the case of timed exams, allow double time, and in the case of long stretches of exams commonly employed in medical school, allow frequent breaks;
    g. Check and double-check work to ensure completeness and accuracy; and
    h. Write down and organize information to-be-remembered.

Shepherd, Patrick C.
Page 6

3) Feedback concerning the results of this evaluation is recommended, and an appointment for this purpose has been scheduled for July 18, 2007 at 8 a.m.

Sincerely,

*Robin C. Hilsabeck*

Robin C. Hilsabeck, Ph.D., ABPP
Diplomate, Clinical Neuropsychology
Licensed Psychologist in Texas (31853) and California (17325)

NAME _____ Shepherd   AGE __   SEX M   ED 17   DH R   DOE 7/9/07

| WAIS-III | | Index | % | |
|---|---|---|---|---|
| Full Scale | | 126 | 96 | |
| Verbal Comprehension | | 131 | 98 | |
| Perceptual Organization | | 118 | 88 | |
| Working Memory | | 124 | 95 | |
| Processing Speed | | 108 | 70 | |
| | | Raw | ACSS | % |
| Vocabulary | | 56 | 14 | 91 |
| Similarities | | 32 | 17 | 99 |
| Arithmetic | | 19 | 14 | 91 |
| Digit Span | | 20 | 12 | 75 |
| Information | | 25 | 15 | 95 |
| Letter-Number Sequencing | | 16 | 16 | 98 |
| Picture Completion | | 22 | 12 | 75 |
| Digit-Symbol Coding | | 79 | 10 | 50 |
| Block Design | | 52 | 13 | 84 |
| Matrix Reasoning | | 22 | 14 | 91 |
| Picture Arrangement | | 20 | 14 | 91 |
| Symbol Search | | 43 | 13 | 84 |
| **WIAT-II** | | **SS** | **%** | |
| Reading Composite | | 117 | 87 | |
| Math Composite | | 131 | 98 | |
| Written Language Composite | | 117 | 87 | |
| Oral Language Composite | | 103 | 58 | |
| | | SS | % | |
| Word Reading | | 109 | 73 | |
| Reading Comprehension | | 118 | 88 | |
| Pseudoword Decoding | | 110 | 75 | |
| Numerical Operations | | 124 | 95 | |
| Math Reasoning | | 123 | 94 | |
| Spelling | | 108 | 70 | |
| Written Expression | | 122 | 93 | |
| Listening Comprehension | | 102 | 55 | |
| Oral Expression | | 107 | 68 | |

| | | Raw | T Score | % |
|---|---|---|---|---|
| **TMT** | Part A | 18 | 54 | 65.5 |
| | Part B | 65 | 38 | 11.5 |
| | | Raw | T Score | % |
| **Stroop** | Word | 104 | 45 | 30.8 |
| | Color | 73 | 43 | 24.2 |
| | Color-Word | 48 | 50 | 50 |
| | | Raw | T Score | % |
| **RCF** | Copy | 35 | | >16 |
| | IR | 19.5 | 42 | 21 |
| | DR | 19.5 | 41 | 18 |
| | | Raw | T Score | % |
| **CVLT-II** | Total T1-T5 | 63 | 64 | 91.9 |
| | T1 | 7 | 50 | 50 |
| | T5 | 16 | 65 | 93.3 |
| | List B | 6 | 50 | 50 |
| | SDFR | 15 | 65 | 93.3 |
| | SDCR | 15 | 60 | 84.1 |
| | LDFR | 15 | 60 | 84.1 |
| | LDCR | 15 | 60 | 84.1 |
| | Intrusions | 5 | 55 | 69.2 |
| | Repetitions | 5 | 55 | 69.2 |
| | Recog Hits | 16 | 55 | 69.2 |
| | False Pos | 0 | 40 | 15.9 |
| | | Raw | Severity | |
| **BDI-II** | | 11 | Minimal | |
| **BAI** | | 6 | Minimal | |

**Tables and Graphs Report of WAIS-III and WIAT-II Testing**                    Patrick C Shepherd

## Ability-Achievement Discrepancy Analysis

Date of Ability Testing: 7/9/2007
Ability Score Type: FSIQ
Ability Score: 126

### Simple-Difference Method

| | FSIQ Score | WIAT-II Score | Diff. | Signif. | Freq. |
|---|---|---|---|---|---|
| WIAT-II SUBTEST | | | | | |
| Word Reading | 126 | 109 | 17** | .01* | 10% |
| Reading Comprehension | 126 | 118 | 8 | .05* | 25% |
| Pseudoword Decoding | 126 | 110 | 16** | .01* | 10% |
| Numerical Operations | 126 | 124 | 2 | ns | >25% |
| Math Reasoning | 126 | 123 | 3 | ns | >25% |
| Spelling | 126 | 108 | 18** | .01* | 10% |
| Written Expression | 126 | 122 | 4 | ns | >25% |
| Listening Comprehension | 126 | 102 | 24** | .01* | 2% |
| Oral Expression | 126 | 107 | 19** | .05* | 10% |
| COMPOSITES | | | | | |
| Reading | 126 | 117 | 9 | .01* | 15% |
| Mathematics | 126 | 131 | -5 | ns | |
| Written Language | 126 | 117 | 9 | ns | 25% |
| Oral Language | 126 | 103 | 23** | .01* | 3% |
| Total | 126 | 120 | 6 | .05* | 25% |

\* Significant at the .05 level.

\*\* Greater than or equal to critical difference of 15 points

THE PSYCHOLOGICAL CORPORATION
A Harcourt Assessment Company

Copyright © 2001 by The Psychological Corporation, a Harcourt Assessment Company.
All rights reserved. Printed in the United States of America.

**AFFIDAVIT OF STEPHEN L. HOLLIDAY, PH.D., ABPP/ABCN**

STATE OF TEXAS                          §
                                        §
COUNTY OF _Bexar_                       §

My name is Stephen L. Holliday, Ph.D., ABPP/ABCN.  I am over the age of 18 and otherwise competent to make this affidavit.  The facts stated within this affidavit are within my personal knowledge and such facts are true and correct, unless otherwise indicated.

I conducted a neuropsychological evaluation on Patrick C. Shepherd in March of 2003.

According to available records and consistent with the history reported to me, Mr. Shepherd started experiencing problems, including stuttering at age 4 when his mother remarried and he was beaten daily with a belt by his stepfather.  He has been given the accommodation of extra time on examinations since approximately the fifth grade.  When given the extra time, Mr. Shepherd's grades were high.  However on tests where no such accommodation was made, such as the Scholastic Aptitude Test, his scores were low because he was unable to finish the examination.  He came to me to explore accommodations for taking the MCAT test for medical school admission.

During my consultation with Mr. Shepherd, the following were administered:

Clinical Interview
Wechsler Adult Intelligence Scale-III (WAIS-III)
Trail Making Test (TMT)
Finger Tapping Test
Grip Strength Test
MicroCog
Woodcock-Johnson III Reading Achievement Test
Minnesota Multiphasic Personality Inventory-2 (MMPI-2)
Millon Multiaxial Clinical Inventory-2 (MMCI-2)

Given the results of the foregoing procedures, I have diagnosed Mr. Shepherd pursuant to DSM-IV, on Axis I, 315.00 Reading Disorder (deficient reading speed/fluency).  This diagnosis is a direct consequence of his reading disorder and test performance.

As a result of his disabilities, Mr. Shepherd cannot pass the USMLE Step 1 exam without the accommodation of extra time.

Mr. Shepherd has an impairment that substantially limits his major life activities of learning, reading, concentrating, and thinking.

The mitigating measures Mr. Shepherd employs to compensate for his impairment primarily consist of reasonable accommodations of additional time when learning, reading, concentrating, and thinking are impacted by time.

EXHIBIT

1

Attached to this affidavit is my neuropsychological evaluation of Mr. Shepherd.   This evaluation was completed by me, a person with knowledge of the event.  It was made near the time the evaluation was completed.  It is in the regular course of my business to make such a record.  It is in the regular course of my business to keep such a record.

Affiant further sayeth not.



Stephen L. Holliday, Ph.D., ABPP/ABCN

SUBSCRIBED AND SWORN TO BEFORE ME on this _29th_ day of May, 2009, to certify which witness my hand and official seal.

_Ludwina E McAuley_
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires: _3|4|2012_

LUDIVINA EUGENIA MCAULEY
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
03-04-2012



**DEPARTMENT OF VETERANS AFFAIRS**
South Texas Veterans Health Care System
Audie L. Murphy Memorial Veterans Hospital Division
7400 Merton Minter Boulevard
San Antonio, Texas 78284



March 7, 2003

In Reply Refer to: 671/116B

## NEUROPSYCHOLOGICAL CONSULTATION

**REFERRAL INFORMATION:** Patrick C. Shepherd is a 26 y/o married European American male referred for neuropsychological (NP) consultation to explore accommodations for taking the MCAT test for medical school admission. Mr. Shepherd has a history of stuttering and slowed reading/test taking abilities in school. Medical history is significant only for migraine headaches and back pain. He has no prior history of psychiatric treatment.

**INTERVIEW DATA:** Mr. Shepherd reports that his language and other developmental milestones were normal until age 4 when his mother remarried and he was beaten daily with a belt by his stepfather. His stuttering reportedly started abruptly at that time. The stepfather beat him regularly for 1-2 years then stopped; but he continued to verbally belittle and abuse him. He received speech therapy for stuttering but reports no repeated grades or other special educational interventions. He reports no difficulty in learning to read but indicates that he has always been a slow reader and does not read much for pleasure even now. He recalls a 4th grade teacher encouraging him to take more time on his examinations and double check his answers. Prior to this he was usually the first one to turn in exams and they contained many careless errors. His grades improved markedly using this strategy and he earned mostly As and Bs in middle and high school. He performed very poorly as a freshman at Trinity University, making mostly Cs and Ds. He dropped out and successfully served in the military as a computer specialist. While in the military, he re-entered a local junior college where he made all As. After his discharge, he enrolled in UTSA as a Biology/Premed major and has continued to earn nearly all As, when given time and a half accommodations for exams. He does not drink alcohol or use street drugs as he is active member of the LDS church. He is happily married without children and looking forward to a career as a medical doctor. See Dr. Getsinger's recent Intake Note for a complete social history and mental status examination.

**BEHAVIOR OBSERVATIONS:** Mr. Shepherd arrived promptly for his appointment well-groomed and dressed in clean casual clothing. He was fully oriented, cooperative, and in good spirits. He quickly and fully engaged in the tests and gave good effort throughout the 6-8 hour battery. He enjoyed the challenge of many of the tests and persevered often completing the most difficult items well beyond the time limits. The obtained results are thought to accurately reflect of his current cognitive and academic abilities, but are likely an underestimate of his potential when allowed to work at his own pace.

**EVALUATION PROCEDURES/RESULTS:** Evaluation procedures included a review of available VA Medical Records, clinical interview and administration of the following NP tests: Wechsler Adult Intelligence Scale-III (Age-SS: FSIQ=122, VIQ=121, PIQ=119, CVI=120, POI=121, WMI=115, PSI=120, V=14, S=10, A=13, SD=10, I=17, C=16, LNS=15, PC=13, C=13, BD=12, MR=15, PA=11, SS=14), Trailmaking Test (Raw Scores: Part A=30", Part B=72'), Finger Tapping test (Dom=55.2, Non-Dom=47.6 taps/10"), Grip Strenth Test (Dom=37.8, Non-Dom=40.3 Kg), MicroCog (Age.Ed SS: A/MC=83, R/C=82, M=82, SP=85, RT=105, IPS=71, IPA=90, GCF=76, GCP=90), Woodcock-Johnson III Reading Achievement Test (Grade SS: Broad Reading=94, Broad Written Language=104, Basic Reading Skills=110, Written Expression=105, Letter-Word Identification=104, Reading Fluency=90, Spelling=101, Writing Fluency=95, Passage Comprehension=101, Writing Samples=134, Word Attack=116), (Minnesota Multiphasic

Personality Inventory-2 (Welch Code:3-16754/902:8# L-K/F#), Millon Multiaxial Clinical Inventory-2 (Personality Code:3 7 4+ 6a 6b 5 1" 2 8b 8a"; Syndrome Code: no clinical elevations).

**DISCUSSION:** On the WAIS-III, Mr. Shepherd scores in the superior range of global intellectual abilities without a significant verbal/performance difference. Inspection of subtest scatter indicates a relative strength in general fund of previously learned information very superior range, while verbal abstractions and immediate span of attention are relative weaknesses (both are only in the in the average range). This test does not require any reading and the results suggest that Mr. Shepherd does possesses the intellectual skills necessary to succeed in Medical School.

Non-dominant finger tapping speed and grip strength were mildly impaired. Complex visual scanning and processing speed was also mildly impaired on Part B of the Trailmaking Test. This discrepancy is very mild but does point to possible developmental compromise of right hemisphere functions such as configural analysis and visual scanning.

On MicoCog, a computer-administered test of various cognitive functions which do require reading skills/speed, Mr. Shepherd only scores in the low average range of global cognitive abilities. Attention/Mental control, Memory, Spatial Processing indices are all in the low average range compared to others his age with a college education. Simple reaction time is in the average range. Inspection of subtest scatter on MicroCog reveals that accuracy score on all tests are performed in the average (or better) range, but that task reaction time is consistently low average and well below average on immediate/delayed recall on the memory subtest. The marked discrepancy between the WAIS-III and MicroCog results strongly supports a specific deficits in reading fluency/speed.

On the Woodcock-Johnson III Reading Achievement Tests, Mr. Shepherd scores in the average to above average range on un-timed subtests measuring letter-word identification, spelling, and writing fluency (compared to others with a college education). Reading fluency, however, was in the low average range and more than two standard deviations below his WAIS-III FSIQ. Word attack skills were in the high average range, while reading comprehension ability was in the superior range (both tests are un-timed)

Results of personality testing indicate a validly disclosing approach to testing, without evidence for any major Axis I psychopathology or character (personality) disorder. Repressive defenses and a somewhat rigid, moralistic personality style are suggested. Inspection of individual test responses suggests some symptoms suggestive of mild anxiety, chronic fatigue, headaches, chest tightness/pain, and brief temper outbursts/family conflict.

**IMPRESSION:** Reading Disorder (DSM-IV 315.00). Mr. Shepherd clearly demonstrates a specific deficit in reading speed/fluency relative to his general intelligence and reading comprehension skills, which are in the superior range. His approach to reading appears to have been influenced by compensatory strategies which he developed to effectively compensate for his stuttering. That is, he heavily relies on phonetic decoding strategies when reading, while neglecting orthographic (whole-word) decoding strategies. His very mildly impaired motor functioning with is non-preferred left hand is interesting in this regard and may suggest mild right hemisphere impairment which interferes with orthographic decoding. This approach to reading is developmentally normal in the early grades, but is typically replaced with orthographic (whole word) decoding as reading over time. Obviously, sounding out each phoneme/word individually dramatically slows his reading speed. Other (non reading-dependent) cognitive tests are in the superior range and suggest that he has the intelligence to succeed in medical school, if provide with additional time for reading-dependent testing and study.

**RECOMMENDATIONS:** (1) The results of this evaluation fully support Mr. Shepherd's request for accommodations in taking the MCAT and other examinations which require reading speed. He should be allowed **double time** to take any timed tests which involve extensive reading. This should be sufficient for him to perform at his true ability level. (2) Mr. Shepherd should be encouraged to explore specific speech/language therapy interventions aimed at improving his orthographic decoding skills in reading. (3) Finally, although there is no evidence of major psychopathology, he may also benefit from brief psychotherapy aimed at understanding and working through the self esteem issues raised by his stepfather's mental/physical abuse and his specific learning disability.

Thank you for referring this very interesting and personable young man. Please feel free to contact me if there are other question or if I can assist with his future care in any way.

Stephen L. Holliday, Ph.D., ABPP/ABCN
Diplomate in Clinical Neuropsychology,
American Board of Professional Psychology
210-617-5121

®eJS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**5-09CV0127-C**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Patrick C. Shepherd | National Board of Medical Examiners |

**(b)** County of Residence of First Listed Plaintiff   Lubbock County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia County, PA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Vincent E. Nowak, Mullin Hoard & Brown, LLP, P.O. Box 31656,
Amarillo, Texas 79120

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☒ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 12101 et seq.

Brief description of cause:
Accommodations regarding additional time to take USMLE Step exam

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                                    DOCKET NUMBER

DATE   6/12/09                SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT   350⁰⁰   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

LUBB3119